# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# CHARLESTON DIVISION

| | |
|---|---|
| **Gloria Nance-Williams,** | Case No.: 2:20-cv-01584-DCN |
|         **Plaintiffs,** | |
| v. | |
| **Target Stores, Target Stores, Inc., Target Corporate Services, Inc. and Target Corporation,** | **MOTION TO COMPEL SETTLEMENT** |
|         **Defendants.** | |

**TO:     JERRY WIGGER, ESQUIRE, ATTORNEY FOR THE PLAINTIFF AND TO THE PLAINTIFF ABOVE-NAMED:**

COMES NOW the Defendants, through Counsel, for an Order pursuant to Rules 26, 30 and 37 of the Federal Rules of Civil Procedure, requesting this Honorable Court to compel and enforce the terms and conditions of the settlement voluntarily entered into and agreed to by all parties to the above-captioned matter. Because a full explanation of the motion as required by LOCAL CIV. RULE 7.04 (D.S.C.) is contained within this motion and a separate memorandum would serve no useful purpose, a separate memorandum of law does not accompany this document.

## **NATURE OF THE CASE**

This case concerns an accident at a Target store that occurred while Plaintiff was shopping. She alleges that she was searching for a shelved item when a bottle of cleaner fell from the top shelf, struck her in the head and spilled onto the floor.

## FACTUAL BACKGROUND

The Plaintiff and Defendants settled this matter in April 2021. Plaintiff is a Medicare beneficiary. Defendants have proposed issuing two checks to Plaintiff's counsel—one payable to the Plaintiff/counsel and the second made payable to Medicare for the amount of the final demand the Centers for Medicaid and Medicare Services (CMS) makes on its lien. Plaintiff counsel opposes this method of payment, insisting that single check be issued to Plaintiff/counsel.

## ARGUMENT

The United States District Court for the Southern District of Florida provides a succinct history of the Medicare statutes that inform this particular case:

> At the time of its inception, Medicare served as the primary payer of all its beneficiaries' medical costs. However, Congress altered the Medicare payment scheme in 1980, in an effort to reduce escalating costs, adding the Medicare Secondary Payer provisions ("MSP") to the Medicare Act. Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is to serve as the "secondary payer" to other sources of coverage. In other words, Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan. The MSP provisions provide that Medicare cannot pay medical expenses when payment has been made or can reasonably be expected to be made under a … liability insurance policy or plan (including a self-insured plan) or no fault insurance. If a primary plan has not made or cannot reasonably be expected to make payment, the Secretary is authorized to make a conditional payment. However, since Medicare remains the secondary payer, ***the primary plan must then reimburse Medicare for all conditional payments.***

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.,* 94 F. Supp. 3d 1285, 1289 (S.D. Fla. 2015), aff'd, 832 F.3d 1229 (11th Cir. 2016) (internal citations omitted) (emphasis added).

There is a dearth of law on this issue in South Carolina, save for the District Court's order in *Humana Ins. Co. v. Bi-Lo, LLC*. No. 4:18-CV-2151-DCC, 2019 WL 4643582, at 1 (D.S.C. Sept. 24, 2019). In that case, Humana (standing in the shoes of Medicare as an Advantage Plan provider) sued Bi-Lo for payments it made on behalf of one of its enrollees when she was

allegedly injured in a Bi-Lo store. *Id.* Bi-Lo settled with the enrollee and disbursed the settlement proceeds directly to the enrollee. *Id.* When the enrollee failed to satisfy a Humana lien from the settlement award, Humana sued Bi-Lo, alleging that it was a secondary payor. *Id.*

Although the District Court addressed a number of issues unique to Advantage Plans, in denying the motion to dismiss, the Court acknowledged the reasonableness of—and indeed recommended—the practice of conditioning "settlement on Enrollee providing the conditional payment amount during settlement negotiations or ***refusing to issue a check directly to the enrollee without ensuring the [Medicare] conditional payments are satisfied***." *Humana*, *4. (emphasis added).

Defendants have requested numerous times, yet have not received, the final demand letter regarding Plaintiff's outstanding Medicare liens related to this case. Although a check for the Medicare lien will be made out to Medicare (or Benefits Coordination & Recovery Center) and the balance in a second check made directly to Plaintiff/counsel, the check to Medicare will be mailed to Plaintiff's counsel to forward onto Medicare. This allows both the Plaintiff and Defendants to meet their duties under the Medicare statute to see that Medicare's lien is satisfied. At present, Plaintiff's refusal to provide the lien amount in order to avoid the issuance of two checks is preventing Defendants from satisfying their obligations under the Medicare Secondary Payor Act to ensure that Medicare's lien is satisfied.  The check proposal does not at all inhibit Plaintiff's own obligations as she will undertake the transfer of that check to Medicare. Defendants' proposal is the only proposal that ensures all parties' obligations under Federal law are met.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that settlement be compelled and that Defendants be permitted to issue a check made payable to Medicare (or the BCRC) and a second check for the balance of the settlement directly to Plaintiff/counsel.

Respectfully submitted,

**SWEENY, WINGATE & BARROW, P.A.**

s/Ryan C. Holt
Mark S. Barrow Fed. I.D. No. 1220
Ryan C. Holt Fed. I.D. No. 10736
Sweeny, Wingate & Barrow, P.A.
Post Office Box 12129
Columbia, SC  29211
(803) 256-2233

**ATTORNEYS FOR THE DEFENDANTS**

Columbia, South Carolina

November 11, 2021